UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., *et al.* and the OFFICIAL STANFORD INVESTORS COMMITTEE, § § § § § § § |  |  |
| Plaintiffs, § |  |  |
| § |  |  |
| v.     § | CIVIL ACTION NO. |  |
| § | 3:11-CV-00297-N |  |
| PETER F. ROMERO, § § |  |  |
| Defendant.    § | Referred to U.S. Magistrate Judge |  |

## REPORT AND RECOMMENDATION

Defendant Peter F. Romero ("Romero") has moved to dismiss (Motion to Dismiss, Doc. 14) the First Amended Complaint Against Peter Romero ("Complaint," Doc. 10) pursuant to FED. R. CIV. P. 12(b)(6). In support of his motion, Romero argues that the Complaint fails to offer a "short plain statement" of the claim in compliance with FED. R. CIV. P. 8(a)(2), and fails to comply with the heightened pleading standard of FED. R. CIV. P. 9(b). He also argues that the claims of the Receiver, Ralph S. Janvey, and of the Official Stanford Investors Committee (collectively, "Plaintiffs") are untimely based on the Texas Uniform Fraudulent Transfer Act's ("TUFTA") statute of limitations. *See* TEX. BUS. & COMM. CODE § 24.010. For the reasons that follow, the Court should deny Romero's Motion to Dismiss (Doc. 14).

1

## I. BACKGROUND

Plaintiffs' action against Romero

> arises out of the Securities and Exchange Commission's (the 'SEC') ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (the 'Stanford Defendants'). As part of that litigation, the Court 'assume[d] exclusive jurisdiction and t[ook] possession of the' 'Receivership Assets' and 'Receivership Records' (collectively, the 'Receivership Estate').

*Janvey v. Alguire*, 846 F. Supp. 2d 662, 666 (N.D. Tex. 2011) (citing Second Am. Order Appointing Receiver, July 19, 2010 (Doc. 1130) (the "Receivership Order"), in *SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex., filed Feb. 17, 2009) (hereinafter *Stanford*).

### A. The Parties

The parties to this case are:

***1. Ralph S. Janvey ("Janvey"), the Court-Appointed Receiver*** – Plaintiff Janvey was appointed by the Court as Receiver of the Receivership Estate stemming from *Stanford*. He was vested with "the full power of an equity receiver under common law as well as . . . . [authorization] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." Receivership Order at 3-4.

Janvey was instructed to "[c]ollect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated." *Id.* at 4. He was also instructed to file "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities

who received assets or records traceable to the Receivership Estate." *Id.* at 5.

**2. *The Official Stanford Investors Committee ("OSIC")*** – Plaintiff OSIC was created by the Court's Order of Aug. 10, 2010 (Doc. 1149) ("OSIC Order") in *Stanford*. It is an organization composed of "individual Stanford investors or attorneys representing Stanford investors." Order of Sept. 24, 2012 (Doc. 33) ("IMG Order") at 3, in *Janvey v. IMG Worldwide, Inc.*, Civil Action No. 3:11-CV-0117-N (N.D. Tex., filed Jan. 18, 2011) (citing OSIC Order at 3-4). Here, as in *IMG Worldwide*, "OSIC seeks to prosecute this action, with the consent of the Receiver, in order to obtain funds for the benefit of the Receivership Estate." IMG Order at 3.

**3. *Peter F. Romero*** – Defendant Romero was a member of the Stanford Advisory Board. *See* Complaint (Doc. 10, ¶ 30); Romero's Motion to Dismiss (Doc. 14 at 2).

### B. Allegations in the Complaint

Plaintiffs allege that the Stanford Defendants transferred funds to Romero that were obtained via fraudulent certificates of deposit, and that Romero either did not exchange reasonably equivalent value or otherwise performed services in furtherance of the Ponzi scheme. *See* Complaint (Doc. 10, ¶ 5). The Receiver and OSIC allege that Romero received over $900,000 in payments from the Stanford Defendants. *Id.* (Doc. 10, ¶¶ 3; 30-31). Romero now moves to dismiss, arguing that the Complaint fails to state claims under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), and that the claims are untimely based on the TUFTA statute of limitations. *See* TEX. BUS. & COMM. CODE § 24.010.

## II. THE COMPLAINT COMPLIES WITH RULES 12(b)(6) AND 8(a)

Romero argues that the Complaint is deficient under Rule 12(b)(6) and Rule 8(a). Romero's

arguments are on all fours with arguments that have previously been rejected by the Court. *See, e.g., Alguire*, 846 F. Supp. 2d at 670-77 (N.D. Tex. 2011).

### *A. Rule 12(b)(6) Standard*

In the course of addressing those arguments, the Court summarized the Rule 12(b)(6) standard:

> When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); see also *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted) . . . .
>
> In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

*Alguire*, 846 F. Supp. 2d at 670 (N.D. Tex. 2011).

### *B. The TUFTA Claim Satisfies Rule 12(b)(6)*

The Complaint sufficiently identifies TUFTA as the "applicable fraudulent transfer law." Complaint (Doc. 10 at 42) ("under applicable fraudulent transfer law . . . . *See, e.g.*, TEX. BUS. & COM. CODE ANN. § 24.013 (Vernon 2009)."); *see generally* TEX. BUS. & COM. CODE § 24.001, *et seq.*; *see also Alguire*, 846 F. Supp. 2d at 670-71 (N.D. Tex. 2011).

The Court has explained that

4

> TUFTA operates to void certain fraudulent "transfers," which the statute defines in relevant part as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money." TEX. BUS. & COM. CODE § 24.002(12). TUFTA considers several types of transfers to be fraudulent. *See id.* §§ 24.005(a) (three types); 24.006 (two types).

*Alguire*, 846 F. Supp. 2d at 670-71 (N.D. Tex. 2011).

Here, as in *Alguire*, because Plaintiffs allege that the "fraudulent transfers to [Romero] were made with the actual intent to hinder, delay, or defraud creditors" (Complaint, Doc. 10 at ¶ 37), Janvey's and OSIC's claim concerns fraudulent transfers under section 24.005(a)(1). *Id.* at 671. As the Court has further explained:

> Section 24.005(a)(1) provides that a transfer "is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." "In determining [a debtor's] actual intent," courts may consider, "among other factors[,] . . . whether . . . the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred" and if "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." TEX. BUS. & COM. CODE § 24.005(b)(8) & (b)(9). Notably, TUFTA considers a debtor to be insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." *Id.* § 24.003(a).
>
> The Fifth Circuit considers a Ponzi scheme to be, "'as a matter of law, insolvent from its inception.'" *Janvey v. Alguire*, 647 F.3d 585, 597 (quoting *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006)); *see also Quilling v. Schonsky*, 247 F. App'x 583, 586 (5th Cir. 2007) (citation omitted). The Receiver therefore may establish fraudulent intent by showing that the Stanford enterprise operated as a Ponzi scheme. *See Warfield*, 436 F.3d at 558 ("The Receiver's proof that [the debtors] operated as a Ponzi scheme establishe[s] the fraudulent intent behind transfers made by [the Receivership entities]." (citing *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995))); *see also Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("[T]he mere existence of a Ponzi scheme is sufficient to establish actual

intent to defraud.") (citations and internal quotation marks omitted) (alteration in original) . . . .

For defendants facing a § 24.005(a)(1) "actual intent" claim, TUFTA provides a statutory defense if the defendants "took in good faith and for a reasonably equivalent value." TEX. BUS. & COM. CODE § 24.009(a). A transferee invoking this defense has the burden to show both objective good faith and the exchange of reasonably equivalent value. See, e.g., Hahn v. Love, 321 S.W.3d 517, 526 (Tex. App. - Houston [1st Dist.] 2009, pet. den.) (citations omitted). The transferee's knowledge is irrelevant to determining whether transfers were made with an intent to defraud. See, e.g., Schonsky, 247 F. App'x at 586. Nor does it matter that the transferee no longer possesses the funds giving rise to the TUFTA claim. A TUFTA plaintiff seeks to recover "judgment for the value of the asset transferred," TEX. BUS. & COM. CODE § 24.009(b), not the specific asset itself, which in many cases left the defendant's possession long ago. Thus, spending Ponzi scheme proceeds does not shield a recipient of fraudulently-transferred funds from liability. See, e.g., Donell, 533 F.3d at 776 & n.9 (noting, in case where a receiver brought an UFTA claim against a recipient of Ponzi scheme funds, that disgorgement may occur "years after the money has been received and spent" and that such a result is "yet another common tragic result of a Ponzi scheme").

Id. at 672-73 (footnotes omitted).

Also as in *Alguire*, Plaintiffs state a TUFTA claim. They allege that the Stanford Defendants operated a Ponzi scheme, pleading the actual-intent-to-defraud element necessary to state a claim under section 24.005(a)(1). *See* Complaint, (Doc. 10 at ¶ 37); *see also id.* at 673. Again as in *Alguire*, Plaintiffs contend that "CD Proceeds from the Ponzi scheme described above were transferred by or at the direction of the Stanford Parties to Romero[, who] did not provide reasonably equivalent value for the transfers of CD Proceeds to him and cannot establish that he is a good-faith transferee." Complaint, (Doc. 10, ¶ 29); *see also Alguire*, 846 F. Supp. 2d at 673. Like the defendants in *Alguire*, Romero does not establish that he qualifies for TUFTA's affirmative defense, and another one does not present itself on the Complaint's face. *See id.*; *see also Clark v. Amoco Prod. Inc.*, 794 F.2d 967,

6

970 (5th Cir. 1986) (noting that a court should grant dismissal under Rule 12(b)(6) "if a successful affirmative defense appears clearly on the face of the pleadings.") (citations omitted). Accordingly, the Court should deny Romero's Rule 12(b)(6) challenge to Plaintiffs' fraudulent transfer claim, just as it rejected a similar challenge in *Alguire*.

### B. By Satisfying Rule 12(b)(6), the TUFTA Claim Satisfies Rule 8(a)(2)

Romero objects to the Complaint for failing to comply with FED. R. CIV. P. 8(a)(2), which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." He argues that the Complaint fails to alert him as "to which law forms the basis of the Receiver's claims," and that the Complaint "failed to set forth . . . sufficient facts." Motion to Dismiss, (Doc. 14 at 10). However, as described above, Plaintiffs bring TUFTA claims that satisfy Rule 12(b)(6); they thereby also satisfy Rule 8(a)(2). *See Alguire*, 846 F. Supp. 2d at 675 (Having otherwise complied with Rules 8(a)(1) and 8(a)(3), "the Receiver brings Texas law claims that satisfy Rule 12(b)(6) . . . . Accordingly, the . . . Complaint satisfies Rule 8(a)'s pleading requirements."). Therefore, here as in *Alguire*, the Court should deny Romero's Rule 8(a)(2) challenge to Plaintiffs' Complaint.[1]

### III. THE COMPLAINT COMPLIES WITH RULE 9(b)

Like the *Alguire* defendants, Romero also "contends that the . . . Complaint fails to meet the heightened pleading requirements of Rule 9(b)". *Id.* As did those defendants, Romero also

> provides no controlling Fifth Circuit authority that applies a heightened
> pleading requirement to TUFTA claims. The issue appears to be an open

---

[1] Plaintiffs also are not required to replead because the "elements" of each cause of action are present, well-pleaded, and give Romero adequate notice to prepare his defense. *See Alguire*, 846 F. Supp. 2d at 675 n. 11.

question in the Fifth and some other circuits. *See, e.g., Biliouris*, 559 F. Supp. 2d at 736 (noting that the Fifth Circuit has not addressed the effect of Rule 9(b) on TUFTA claims (citing *Quilling v. Stark*, 2006 WL 1683442, at *5 (N.D. Tex. 2006) (Lindsay, J.))); *Wing v. Horn*, 2009 WL 2843342, at *3 (D. Utah 2009) (noting that "[t]he applicability of Rule 9(b) to UFTA claims [was] an issue of first impression in the Tenth Circuit"). The courts that have considered the matter have arrived at different conclusions, often by drawing a distinction between intentional and constructive fraudulent transfer claims. *See, e.g., Kranz v. Koenig*, 240 F.R.D. 453, 455-56 (D. Minn. 2007) (collecting cases).

"[T]he Court can find no principled reason for applying Rule 9's pleading requirements to . . . the Receiver's fraudulent transfer claims" for the same reasons given by the *Wing* Court. *Wing*, 2009 WL 2843342, at *5. In the fraudulent transfer context

> [t]here is no allegation that the [d]efendant committed any act of fraud; indeed, the defendant's conduct is simply not an element of the Receiver's claim. Furthermore, the Court finds that the distinction between intentional fraudulent transfer and constructive fraudulent transfer claims drawn by other courts addressing the applicability of Rule 9 to fraudulent transfer cases is not helpful in Ponzi scheme cases in which "actual intent" can be inferred by virtue of the transferor's insolvency as a matter of law. Finally, the Court finds that this inference of fraudulent intent applies to all transfers from a Ponzi scheme, regardless of the defendant's characterization of them as ordinary business transactions.

*Id.*

This conclusion comports with a fairly recent Northern District of Texas TUFTA case. *See GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, 2009 WL 5173954, at *10 (N.D. Tex. 2009) (Lindsay, J.) ("[Plaintiffs have] not alleged *fraud* against PlainsCapital or Moving Defendants, which is the contemplation of Rule 9(b). Plaintiffs have merely alleged that Moving Defendants were the recipient of funds fraudulently obtained. Nothing in the complaint or record indicates that Moving Defendants committed any fraudulent act that caused the funds to be transferred.") (emphasis in original). Indeed, it aligns with several recent cases involving other states' UFTAs. Accordingly, the Receiver's TUFTA claim need not satisfy Rule 9(b).

*Id.* at 675-77 (footnotes omitted). In *Alguire*, the Court further found that even if the Complaint was required to satisfy Rule 9(b), it would have done so, by alleging "fraud with

sufficient particularity to avoid dismissal." *Id.* at 677. As in *Alguire*, Plaintiffs have provided Romero with "sufficient notice of the time period in which [they] believe[] the transfer of fraudulently-obtained funds occurred." *Id.* Further, here as in *Alguire*,

> [a]ssuming, as the Court must that the factual allegations in the [Plaintiffs'] Complaint are true: The Stanford Defendants operated a Ponzi scheme that [Romero] furthered. Because the scheme had few, if any, business components untouched by the sale of fraudulent investment vehicles, [Romero] necessarily received compensation in the form of funds derived from unsuspecting investors' cash infusions into the Ponzi scheme. This makes [Romero's] compensation assets that are potentially traceable to the Receivership Estate. [Plaintiffs] assert[] that [Romero] therefore holds and controls–or previously disposed of–proceeds that are traceable to the Receivership Estate. And, [Plaintiffs] identify the specific amount of CD Proceeds- related compensation [Romero allegedly received, and have therefore] apprised [Romero] of a sufficiently "substantial amount of particularized information about [his] claim in order to enable [them] to understand it and effectively prepare a responsive pleading and an overall defense of the action[]." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1296 at 39 (3d ed. 2004).

*Id.* (footnotes omitted). Therefore, here as in *Alguire*, the Court should deny Romero's Rule 9(b) challenge to Plaintiffs' Complaint.

### IV. PLAINTIFFS' CLAIMS ARE NOT BARRED BY LIMITATIONS

Romero argues that Plaintiffs' claims are time-barred on the face of the Complaint, arguing that TUFTA's limitations provision is a four-year statute of repose and that Plaintiffs seek to recover for transfers occurring four years prior to filing, or, in the alternative, that the Receiver should have known of the transfers immediately upon his appointment. The Court has previously rejected these arguments as well: TUFTA's discovery rule applies, and it is unclear from the face of the complaint whether Plaintiffs' claim is time-barred. *See Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 793 F. Supp. 2d 825, 831-35 (N.D. Tex 2011) ("*D.S.C.C. I*")(Godbey, J.)(holding that, where

Receiver filed complaint over a year after appointment, TUFTA claim was still timely as a matter of law).

Janvey avers that discovering the transfer took time and review of a voluminous record of documents. Thus, he and OSIC have pleaded that the Complaint was filed within the limits of TEX. BUS. & COMM. CODE § 24.010(a)(1), which allows an action to be brought against the transferee of an allegedly fraudulent transfer, as such transfers are defined in § 24.005(a)(1), within one year after the transfer "could reasonably have been discovered by the claimant." The Fifth Circuit recently said of Janvey's role in another of the *Stanford* cases that:

> Given the extent of the Stanford enterprises, the Receiver's duties with regard to them, and the extent of the fraudulent transfers, it would not have been reasonable to expect him to immediately discover the fraud . . . . [T]he Receiver exercised reasonable diligence and thus brought the action within one year of when the transfers could reasonably have been discovered.

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 2012 WL 5207460, at *3 (5th Cir. 2012) ("*D.S.C.C. II*")

Romero also argues, Reply Brief in Support of Motion to Dismiss at 6, that Janvey stands only in Stanford's shoes, but not in those of Stanford's creditors. This argument has been rejected by the Fifth Circuit, which has held that "the Receiver has the authority to pursue the instant action on behalf of the creditors." *D.S.C.C. II*, 2012 WL 5207460; *see also id.* ("[T]he Receiver represents the creditors, via the Stanford corporations, in pursuing TUFTA claims.")

Romero further argues that, because Janvey stands in Stanford's shoes, the time it has taken Janvey to disentangle the interrelations of the Stanford enterprises, and Romero's own relationship to them, is not reasonable under § 24.010(a)(1), "[b]ecause the Stanford entities' knowledge is imputed to the Receiver as a matter of law." A similar argument has also been rejected by the Court.

*D.S.C.C. I*, 793 F. Supp. 2d at 833 ("The discovery rule's application here thus turns on whether the facts giving rise to the Receiver's claims were inherently undiscoverable to the Stanford Defendants' creditors; when the Stanford Defendants obtained knowledge of the contributions is irrelevant."). Moreover, in light of the Fifth Circuit's holding in *D.S.C.C. II* that Janvey does not merely stand in Stanford's shoes, but also represents the *Stanford* creditors, the premise that the Stanford entities' knowledge is imputed to Janvey is no longer tenable.

Finally, Romero argues, Reply Brief in Support of Motion to Dismiss at 9-10, that he was not an "insider" as defined in TEX. BUS. & COMM. CODE § 24.007. It is true that, under § 24.005(b)(1), a transferee's insider status is a factor to be weighed in determining whether a transfer was fraudulent under § 24.005(a)(1), and thus whether a suit against the transferee can shelter within the reasonable discovery time provision of § 24.010(a)(1). Nevertheless, the Court need not determine Romero's insider status in order to determine whether the transfers to him fall under § 24.005(a)(1) because the Stanford enterprises have been held to be a Ponzi scheme and "transfers made from a Ponzi scheme are presumptively made with intent to defraud . . . ." *Quilling*, 247 F. App'x at 586.

## V. CONCLUSION

Both the Receiver and OSIC have sufficiently pleaded claims upon which relief can be granted pursuant to FED. R. CIV. P. 8(a)(2), 9(b), and 12(b)(6); further, Romero has not established from the face of the Complaint that Plaintiffs' claims are time-barred. Thus, the Court should deny Romero's motion.

**IT IS, THEREFORE, RECOMMENDED** that the United States district judge deny Defendant's Motion to Dismiss.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

The clerk shall mail a copy of this order to Defendant at his last known address by certified mail, return receipt requested, and to all other counsel of record by first class mail or electronically.

DATED this 28th day of November, 2012.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE